442 P.2d 145

Bill William **TOLMACHOFF**, Petitioner,

v.

**INDUSTRIAL COMMISSION** of Arizona; John Ahearn, Bruce Theony, and Frank G. Murphy, as members of and constituting the Industrial Commission of Arizona, and Ora Bryant Hopper and Dennis D. Hopper (Ora B. Hopper Co.), Respondents.

No. I CA–IC I88.

Court of Appeals of Arizona.

June 17, 1968.

Chris T. Johnson, Phoenix, for petitioner.

Robert D. Steckner, Chief Counsel by Arthur B. Parsons, Phoenix, for respondents.

STEVENS, Judge.

The issue before this Court is whether the record sustains the action of The Industrial Commission in refusing to reopen a prior award of no compensation.

On 3 July 1962, Tolmachoff, then age 60, was using a hammer or gun, driving concrete nails and felt a sharp pain in his right wrist. He was seen by Dr. Smith. Proper reports were filed with The Industrial Commission and on 15 October 1962 the case was closed without an award of compensation. He filed a "petition and application for readjustment or reopening of claim". The petition bears two file stamps, one dated 7 February 1966 and one dated 23 February 1966. The petition was denied by an award dated 23 March 1966. On 24 March 1966, Tolmachoff filed a petition for rehearing and on 9 May 1966 he employed counsel.

A formal hearing was held on 30 August 1966. The referee summarized the matter as follows:

"* * * The issue before the Commission at this time is whether the Applicant has any new, additional, or previously undiscovered disability attributable to the industrial accident in question, and particularly whether the Applicant had the new, additional, or previously undiscovered disability on the date that he filed his Petition & Application for Readjustment or Reopening, which was February 23, 1966."

In relation to this summary, both Mr. Johnson and Mr. Parsons responded in the negative when asked whether there were "any corrections or additions".

Dr. Smith was not called as a witness and there is a later letter in the file stating that the petitioner did not desire to cross-examine Dr. Smith.

The witnesses at the hearing were Dr. Taber, Dr. Roth and the petitioner.

Dr. Taber is an orthopedic specialist who first saw Tolmachoff in March 1966 and who in his report to the Commission before the hearing recommended X rays and diagnostic studies. It was Dr. Taber who recommended that Tolmachoff be seen by Dr. Roth who, at the time of the hearing, had seen Tolmachoff several times and

was a continuing treating physician. Dr. Roth is a specialist in the field of rheumatology, a specialty in the treatment of arthritis.

Dr. Taber testified that Tolmachoff had had gout for some time this being a general systematic disease. He further testified that gouty arthritis can be aggravated by trauma. He testified that the events of July 1962 probably were significant and further testified that any triggering or aggravation resulting from the 1962 events had subsided by 1966. In his opinion the 1962 aggravation would be only temporary.

Dr. Roth expressed the opinion that Tolmachoff's problems were not gouty arthritis nor were they degenerative arthritis but were rheumatoid arthritis. He testified that the July 1962 incident was a factor and played a significant role. He further testified that he was unable to give a percentage of disability as of the date of the hearing and believed that the right wrist condition was progressive. At the time of the hearing both wrists were involved with arthritic problems although the evidence does not show any trauma or contributing factor to the left wrist problem. With reference to the two wrists we find the following testimony:

"Q But that his right wrist was worse, is that correct?

"A Well, no, both of them actually showed synovial thickening; in fact, I graded them both as two plus thickening, which is a significant degree of involvement, but chronologically his right wrist has persisted over the years as the one that has been most involved and, therefore, I don't think we have ever X-rayed the wrist. I am sure that if we did, we would find that it would probably be the most damaged one, because it has been involved. This one was more acutely involved over a short period of time, the left one, but the right one was involved with very little history of remission. It was involved over the years."

Bearing in mind the outline of the issues which were set forth by the referee and agreed to by Johnson, we must remember that the October 1962 award became final and that the problem presented to the Commission was the disability as of 23 February 1966. In this connection the most significant portion of Dr. Taber's testimony is as follows:

"Q Are you able to say whether or not in the absence of the episode back in 1962 his right wrist would be at the time you examined him in the condition that it was?

"A Would this have occurred without—

"Q Could it have occurred, yes.

"A I think I said earlier that it could have. It didn't in this case, but it could have. He could have gone on and developed rheumatoid arthritis involving any of the joints that are involved. These are common areas of involvement with rheumatoid disease.

In this case, specifically, there was this factor, and—

"Q Would you elaborate on that 'there was this factor'?

"A There was the factor that he did notice his difficulty after use of the hand gun, that apparently he was using the hand gun while he was still having symptoms, and that this not only precipitated the trouble, but possibly even aggravated the early trouble with the wrist. *Whether this means that this is more involved now than it would have been had he not been using the hand gun, I think is very difficult to say right now.* (emphasis added)

"Q Is what you have said on the basis of reasonable medical certainty or probability?

"A As far as this being a precipitating factor?

"Q Yes.

"A Yes, I think so."

The most significant portion of this testimony is the italicized portion.

The referee's report is, in part, as follows:

### "ISSUE

The existence of new, additional, or previously undiscovered disability attributable to the industrial accident of 7–3–62.

### "ULTIMATE FINDINGS

"1. Medical evidence before the Commission establishes a pre-existing condition of Rheumatoid Arthritis.

"2. Medical evidence before the Commission establishes that the episode of 7–3–62 aggravated and precipitated the onset of the Rheumatoid Arthritic condition of the right wrist; that said condition was brought about earlier; and has progressed more rapidly by reason of the episode, than it in all likelihood would have otherwise.

"3. Applicant is currently under the care and treatment of his attending physician, Sanford H. Roth, M. D., and further medical care and further treatment is indicated.

### "FINDING AND CONCLUSION

Medical evidence establishes that applicant has new, additional or previously undiscovered disability attributable to the episode of 7–3–62.

### "RECOMMENDATION

That the Commission rescind the FINDINGS AND AWARD DENYING REOPENING OF CLAIM entered on 3–22–66, and enter FINDINGS AND AWARD FOR NEW AND ADDITIONAL DISABILITY from and after 2–23–66, for accident benefits and compensation as indicated."

Notwithstanding these recommendations, the Commission reaffirmed its March 1966 award which denied the reopening.

The petitioner thereafter filed a "Petition for Rehearing" urging that the Commission is required to rely on the fact finding of its referees. A new hearing was scheduled and upon the petitioner indicating that he had no new evidence to present, the petition was then denied and the matter brought to us for review.

In our opinion in Powell v. Industrial Commission, 4 ArizApp. 172, 418 P.2d 602 (1966) we urged that the findings of the referee should be accorded the same stature by The Industrial Commission which an appellate court accords to the findings of a Superior Court Judge. The guiding principle in relation to a review of the findings of a trial judge is well stated in the following quoted portion of Rule 52(a) of the Rules of Civil Procedure, 16 A.R.S., namely:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses."

We recognize that our views in this regard were vacated by the Arizona Supreme Court in its decision in the review of our Powell opinion, 102 Ariz. 11, 423 P.2d 348 (1967), therein the Supreme Court stated:

"The referee system was recognized as early as 1930 in Johnson v. T. B. Stewart Construction Co., 37 Ariz. 250, 293 P. 20 (1930), which held that although the Commission could delegate some of its ministerial or administrative duties to agents, including the power to hold hearings and take testimony, the final duty of reaching a decision on the evidence could not be delegated to anyone.

\*   \*   \*   \*   \*   \*

(T)his Court has consistently held that on appeal the Court must consider the evidence before the commission in a light most favorable to sustaining the decision, and will sustain the Commission's findings if reasonably supported by the evidence." Powell v. Industrial Commission, 102 Ariz. 11, 13, 14, 423 P.2d 348, 350 (1967).

In the case we now have under consideration we are not called upon to decide whether the October 1962 award might have been different had medical evidence similar to

**590**

that presented by Dr. Taber and Dr. Roth been then presented. We are called upon to determine whether the medical evidence with reference to Mr. Tolmachoff's wrist condition in 1966 requires a finding of the presence of new, additional or previously undiscovered disability having a causal relationship to the 1962 incident. The principles in relation to this problem are stated in Davila v. Industrial Commission, 98 Ariz. 258, 403 P.2d 812 (1965).

In our opinion the record sustains the action of The Industrial Commission.

The award is affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.